IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

**CONTINENTAL DIVIDE TRADING POST, INC.,**
a New Mexico corporation; **INDIAN TRADE CENTER,**
**INC.,** a New Mexico corporation; **GALLUP INDIAN**
**PLAZA, INC.,** a New Mexico corporation; **YOREL,**
**INC.,** a New Mexico corporation; and **RIO GRANDE**
**WHOLESALE, INC.,** a New Mexico corporation,

                      Plaintiffs,

v.                                                      CIV. No.  98-988 JP/DJS

**TOM UDALL,** Attorney General of the State of
New Mexico,

                      Defendant.

## MEMORANDUM OPINION AND ORDER

On August 21, 1998 Defendant filed his "Motion to Abstain or Dismiss Counts II and III" (Doc. No. 8). After a careful review of the law and the briefs, I conclude that the motion should be granted.

## Background

Plaintiffs are New Mexico corporations that sell Native American jewelry and arts and crafts. The Defendant has recently promulgated regulations under the New Mexico Unfair Trade Practices Act, NMSA 1978, §§ 57-12-1 et seq. ("UPA") and the New Mexico False Advertising Act, NMSA 1978, § § 57-15-1 et seq. Those regulations, which are codified at 1 N.M.A.C. 2.7, restrict the manner in which Plaintiffs and other sellers of Native American artwork advertise their wares, mark prices on their goods, and bargain with their customers. The regulations also require

sellers of Native American goods to maintain certain records. In Count I of the Complaint, Plaintiffs assert that the regulations violate their First Amendment right to free speech; in Count II, Plaintiffs claim that Defendant exceeded the authority given to him by New Mexico law in adopting and promulgating the regulations by acting outside the scope of the Unfair Trade Practices and False Advertising Acts; in Count III, Plaintiffs contend that the regulations violated their right to due process under the Fourteenth Amendment as well as the requirements of New Mexico law for the adoption of such regulations; in Count IV of the Complaint Plaintiffs request injunctive relief. Similarly situated plaintiffs have filed a lawsuit in the First Judicial District of the State of New Mexico that raises substantially similar objections to the Defendant's new regulations. See Utility Shack, et al. v. Tom Udall, D 0101-CV-98-01899.

In his motion, Defendant asserts that abstention is appropriate in this case under the doctrine set forth by the Supreme Court in Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941). In the alternative, Defendant argues that Counts II and III of the Complaint should be dismissed because they are barred by the Eleventh Amendment. For the reasons set forth below, I conclude that I should abstain from exercising jurisdiction in this case.

## Abstention

A federal court should abstain from exercising jurisdiction where state action is being challenged in federal court as contrary to the federal Constitution, and there are questions of state law that may be dispositive of the case. 17A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4242 (2d ed. 1988). In Pullman the plaintiff wished to enjoin enforcement of an order of the Texas Railroad Commission, arguing that the order violated its Constitutional rights and that state law did not give the Commission authority to issue the order. Pullman, 312

U.S. at 498.  A unanimous Supreme Court stated: "In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication."  Id. at 500.  The Court reasoned that abstention was called for in order to avoid the waste of judicial resources that would result when the federal court made a premature ruling on federal Constitutional issues as well as to avert the friction between federal and state courts that would occur if the federal court ruled on ambiguous state law.  See id.  The Court then ordered the district court to abstain from deciding the case but to retain jurisdiction until the parties had an opportunity to obtain from the state court a decision on the state issues involved.  Id. at 501-02.  The Pullman decision enabled the state court to decide the state issues and allowed the federal court to avoid deciding a federal constitutional question unnecessarily.  See WRIGHT, MILLER, & COOPER, supra, at § 4242 ("The Pullman doctrine rests on the desirability of avoiding unnecessary decision of constitutional issues.").

    This case presents a scenario very similar to that in Pullman.  In Pullman, the Supreme Court found that the state court should first decide whether a state law that had not been construed by the courts of the state authorized the Railroad Commission to issue its order.  If the order was invalid under state law, the federal constitutional issue would become moot.  Similarly, the Plaintiffs in this case contend in Count III of their Complaint that the Defendant exceeded his authority under New Mexico state law in issuing the regulations.  Complaint for Declaratory Judgment and Injunctive Relief, ¶34 ("The Regulations . . . violate the Due Process Clause of the U.S. Constitution, Amendment XIV, as well as the requirements of New Mexico law for the

adoption of such Regulations").[1]

Neither statute under which the Defendant issued the regulations explicitly defines the scope of the attorney general's powers or the procedures he must follow in implementing regulations to enforce those statutes.[2] There are no cases from New Mexico courts interpreting the attorney general's powers or the procedural restrictions placed upon him when he promulgates regulations such as those in this case.

In addition, the New Mexico Administrative Procedures Act ("APA"), NMSA 1978 §§ 12-8-1 et seq., is of little help in this inquiry. The APA applies only to "agencies," which are narrowly defined as those government bodies placed under the APA's restraints by law. Thus, NMSA 1978, § 12-8-2(A) provides:

> "[A]gency" means any state board, commission, department or officer authorized by law to make rules, conduct adjudicatory proceedings, make determinations, grant licenses, impose sanctions, grant or withhold relief or perform other actions or duties delegated by law, *and which is specifically placed by law under the Administrative Procedures Act*...

(emphasis added). Neither the Unfair Trade Practices Act nor the False Advertising Act places the attorney general's regulatory authority under the constraints of the APA. These statutes stand in stark contrast to the Indian Arts and Crafts Sales Act, NMSA 1978, § § 30-33-1 et seq., which

---

[1] Although in their briefs the parties quibble over whether Count III contains a state law claim or a claim under the Fourteenth Amendment, the plain language of Count III reveals that it contains both a state law claim and a constitutional claim.

[2] The New Mexico Unfair Practices Act merely provides that "The attorney general is empowered to issue and file as required by law all regulations necessary to implement and enforce any provision of the Unfair Practices Act." NMSA 1978, § 57-12-13. Similarly, the New Mexico False Advertising Act provides "The attorney general is empowered to issue and file as required by law all regulations necessary to implement and enforce any provision of this act." NMSA 1978, § 57-15-7.

authorizes the attorney general and the new Mexico office of Indian affairs to promulgate regulations "pursuant to the Administrative Procedures Act." NMSA 1978, § 30-33-11. Section 30-33-11 illustrates that the New Mexico legislature is fully capable of placing the attorney general's rulemaking powers under the strictures of the APA when it desires to do so.

Consequently, there is little to guide a decision as to whether the attorney general has violated New Mexico law in adopting and promulgating the regulations. New Mexico statutory and common law are silent on the issue. Only the attorney general's own regulations, found at 1 N.M.A.C. 2.1.0 et seq.[3], describe the procedural process he must follow when adopting regulations. Among these rules, only two sentences appear to apply to the Plaintiffs' claims in this case:

> The Attorney General shall consider fully all written and oral submissions respecting the proposed rule. Upon adoption of a rule contested at hearing or otherwise, the Attorney General shall issue a concise statement of his or her principal reasons for adoption of the rule together with the reasons for any rejections.

1 N.M.A.C. 2.1.3(A). However, this regulation does not outline any precise procedures the attorney general must follow in adopting other regulations, the amount of evidence necessary to support those regulations, or the standard to be applied by any court reviewing the attorney general's decision. Under these circumstances, determination of the standards to be applied to evaluate the attorney general's conduct in such cases is best left to the New Mexico courts. Most importantly, a finding by the New Mexico state court that the Defendant exceeded his authority under New Mexico law to issue the regulations would render the federal Constitutional issues

---

[3] These are Exhibit 3 to Plaintiffs' "Memorandum in Support of Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction."

moot.

Thus, abstention under Pullman is appropriate in this case. The proceedings in this court should be stayed until after the Plaintiffs have had an opportunity to obtain a decision on the underlying state law issue from a New Mexico state court. American Trial Lawyers Ass'n v. New Jersey Supreme Court, 409 U.S. 467, 469 (1973) (noting that it is the "proper course" for the federal court to retain jurisdiction while the parties seek a ruling from the state court on issues of state law).

## Eleventh Amendment Immunity

The Eleventh Amendment grants states sovereign immunity from suit in federal court when the lawsuit is brought by a private party and the state has not given its consent to be sued. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98 (1984). Furthermore, the Eleventh Amendment grants immunity from suit to state officials when "the state is the real, substantial party in interest." Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464 (1945).[4] The Supreme Court crafted an important exception to this broad grant of immunity when it issued its opinion in Ex parte Young, in which the Court stated that a lawsuit challenging the constitutionality of a state official's action is not one against the state. 209 U.S. 123 (1908). The Court's reasoning in Young rested on the notion that when a state official violates the federal Constitution, the official does so without the authority of the state. See id. at 159-60. Ex parte Young also limits the relief that can be afforded. A state officer can be enjoined from enacting improperly in the future but cannot be required to pay damages to those

---

[4]The Plaintiffs do not question that the state of New Mexico is the real party in interest in this case.

who have been wronged in the past.  Edelman v. Jordan, 415 U.S. 651 (1974).  Such a monetary award would have to be paid from state funds, rather than personally by the officer named as defendant, and would amount to an action for damages against the state that is prohibited by the Eleventh Amendment.  Id. at 665.

Against this background, the Supreme Court addressed another question: does the Eleventh Amendment bar a federal court from hearing a claim that a state official has violated a *state* law?  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 103 (1984).  In Pennhurst, the Court held that the Eleventh Amendment does bar such a claim, even if the claim is pendent to a claim that the state officer has violated the federal constitution.  Id. at 121.  ("pendent jurisdiction does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment.").  Pennhurst leads inevitably to the conclusion that the Eleventh Amendment bars assertion in federal court of Plaintiffs' state law claims–Counts II and III of the Complaint–that the Defendant violated New Mexico state law.

Plaintiffs rely on the Supreme Court's earlier decision in Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S.670 (1982), to argue that because the Defendant acted beyond the scope of his state statutory authority, the Eleventh Amendment does not bar their claims.  However, the Supreme Court rejected a similar argument in Pennhurst, stating "[Treasure Salvors] and other modern cases make clear that a state officer may be said to act ultra vires only when he acts without any authority whatever... As the Court in Larson explained, an ultra vires claim rests on the officer's lack of delegated power.  A claim of error in the exercise of that power is therefore not sufficient." Pennhurst, 465 U.S. at 101, n.11 (internal citations and quotations omitted).  Here, Plaintiffs acknowledge that under state law the Defendant has the authority to promulgate

7

the regulations; they contend, however, that his exercise of that authority was beyond what state statutes permitted. Thus, Plaintiffs' state law claims are not ultra vires claims as defined by the Supreme Court in Pennhurst. Counts II and III (insofar as Count III presents a claim that Defendant violated state law) should be dismissed without prejudice so that the Plaintiffs may reassert those claims in state court.

IT IS THEREFORE ORDERED that:

(1) Defendant's "Motion to Abstain or Dismiss Counts II and III" (Doc. No. 8) is GRANTED and Count II and that portion of Count III that asserts a state law claim are DISMISSED WITHOUT PREJUDICE so that Plaintiffs may reassert those claims in state court;

(2) Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction (Doc. No. 2), filed August 14, 1998, is DENIED; and

(3) all proceedings in this case are STAYED.

_____
**UNITED STATES DISTRICT JUDGE**